15-0446, People v. Salvador, Begay All right. Can the attorneys on Begay please approach the podium and identify yourselves for the record? Good morning, Your Honors. I am Geneva Penson for the appellant, Mr. Begay. Good morning. Assistant State Attorney John Walters for the People. Ms. Penson, did you want to reserve time for rebuttal?  Okay. So your initial argument can be 17 minutes, and you're going to have three minutes for rebuttal. All right. Thank you. Ms. Penson, you can begin. May it please the Court, again, I represent Petitioner Appellant Mr. Salvador Begay. He is appealing the Circuit Court's erroneous dismissal of his first stage or, I'm sorry, he is appealing the Circuit Court's erroneous dismissal of his post-conviction petition on its own initiative. That dismissal occurred more than 90 days after the petition was filed. Mr. Begay is asserting two claims for relief. First, the Circuit Court erred in dismissing his petition on its own initiative since that dismissal took place more than 90 days after the petition was filed. That argument is based on your assumption that the petition was filed with the original date, and there was a lot of dispute with regard to the filing with the clerk's office and docketing it to go onto the court call. Is that correct? I don't think there was any dispute that the petition was delivered to the clerk's office and filed in the clerk's office on December 6th of 2010. But for whatever reason, it didn't make it onto the docket, is that right? That's correct. For several months. For whatever reason, the clerk did not make any entry or place the call on the, place the petition on the court's call. So if we find that it has to be on the docket in order for the 90 days to start running, does your argument fail? No, Judge, because under Justice, pardon me, under the statute and under this court's prior decisions, once the court clerk marks the petition filed, then the petition is considered to be entered onto the docket. So our argument is once that petition was filed. Well, there's a lot of things that you could file in the clerk's office and not necessarily have it docketed to be argued or discussed in the trial court. Isn't that correct? So why would those two things be the exact same? Well, according to this court's decision, decisions in People v. McCaskill, that's 2012 ILAP 1st, 110174, and also People v. Gibson, 377 ILAP 3rd, 748. Again, that's this court's decision from 2007. Once the petition is marked filed, it is entered onto the court's docket. Now, in both of those cases, McCaskill and Gibson, the state argued that once those petitions were filed, there was something more that needed to take place before those petitions were considered entered on the docket. And therefore, the state argued the summary dismissals were appropriate, even though they took place more than 90 days after the petitions had been marked filed. Well, what do you say about the Lentz decision? What did Lentz think of McCaskill and Gibson? The Lentz decision, 2014 ILAP 2nd, 130332, is pretty much in line with McCaskill and Gibson as well. In Lentz, the DuPage County Circuit Court seemed to impose a duty on the petitioner or his counsel to draw the court's attention to the fact that the petition had been filed. The circuit court in Lentz dismissed the petition because counsel failed to do that, and rather, the court in Lentz decided that the 90-day period did not begin to run until long after the petition had been filed, because counsel failed to bring the petition to the court's attention. The 2nd District in Lentz rejected that argument and reversed the circuit court's decision. The 2nd District held that the petitioner and his counsel have no duty whatsoever to draw the court's attention to the fact that it has filed a petition. Even the 2nd District said that that was totally up to the clerk of the court to draw the court's attention to the fact that a petition had been filed. And in Lentz, the 2nd District held that the 90-day period began to run on the day that the petition was filed, and so that any dismissal more than 90 days after that was invalid. The post-conviction hearing statute itself reads, states the same, basically. In Section 122-1B, the statute states, the proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition together with a copy thereof verified by affidavit. Petitioner shall also serve another copy on the state's attorney by any of the methods provided in Rule 7 of the Supreme Court. And then the statute goes on to say the clerk shall back up the petition for consideration by the court pursuant to Section 122-2.1 upon his or her receipt thereof, and bring the same promptly to the attention of the trial court. So any failure to place the petition on the call is due to the clerk's error. We don't really know what happened in this case, but all we do know is that the petition was filed in the clerk's office. In the record, there is a copy of that petition bearing the clerk's filed stamp. And the dismissal, which took place here more than 225 days later, was not in compliance with the 90-day rule under the statute, and under the Illinois Supreme Court's decision in People v. Porter. So for that reason, Mr. Begay is asking this court to reverse and remand for second stage post-conviction. And that's what we're going to do in this case. We're going to move to the post-conviction proceedings. Unless there is further inquiry about that particular claim, then, I'll move to Mr. Begay's second claim, which is that despite the fact that he filed his post-conviction petition after his sentence of probation had already been terminated, he has standing under the Post-Conviction Hearing Act to receive post-conviction relief. And the reason for that is that Mr. Begay is subject to the sex offender registration statute and to all of the requirements imposed by statute on registered sex offenders. So being unregistered is tantamount to still being incarcerated? Judge, admittedly, there is no case law stating that position. In fact, the published... This case law that says the opposite. That is correct. That is correct. However, Mr. Begay is presenting a good-faith argument for the modification or extension of that law because the cases that are cited in opposition to Mr. Begay's claim of standing are People v. Downen, and People v. Stavanger, which have previously been cited to the court. In both of those cases, they rejected the very argument that Mr. Begay is making now. However, both of those cases relied on the Illinois Supreme Court's decision in People v. Malchow, 193 L. 2nd, 413. That is a case from the year 2000 in which the Supreme Court considered the constitutionality of the Sex Offender Notification and Registration Act as it existed at that time. And the Supreme Court did conclude that a person... that the sex offender registration is basically a collateral consequence of a conviction and it's not constituting punishment, which leads to the conclusion in post-conviction cases that a person is not in custody merely because they are required to register as a sex offender. What's the length of the defendant's registration here? Is it a lifetime registration? Yes. So he's incarcerated for life, under your view. He'll always be able to file a post-conviction petition. Well, no, because there are also statutes of limitation pursuant to the Post-Conviction Hearing Act, which... On actual innocence? Well, no, not on actual innocence. Let me ask you this. Do you think it's proper at the first stage, first stage, for the trial judge to dismiss the claim for this reason, that the defendant's not incarcerated anymore? No, Judge. The Post-Conviction Hearing Act states exactly what circumstances are appropriate for a trial judge to dismiss a petition at the first stage. And that is that the petition itself, the claims in the petition, are frivolous and patently without merit. Now, this issue of standing is an issue that can be a very thorny legal issue, which does not need to be addressed at the first stage. In this particular case, Mr. Begay had counsel to file his petition, his first-stage petition. But as your honors know, normally post-conviction petitions are filed pro se by unrepresented defendants at the first stage. And so an issue, a legal issue like standing is better left to litigation at the second stage of post-conviction review. Do you think it's proper for us to decide that on appeal from a first-stage dismissal? Or do you think that what we should be doing is remanding for a second stage? Oh, I think that your honors should remand for a second stage, for second-stage post-conviction proceedings. And that is the relief that Mr. Begay has asked for in his petition. If you take a look at the cases cited by the state where they are discussing whether a person has standing or whether a person is in custody for the purposes of the Post-Conviction Hearing Act, that's Carrera, West, and Dent. In all of those cases, the petitions were not first-stage dismissals. Those cases involved petitions that were dismissed pursuant to the state's motion, okay? And then the state cites another case, People v. Vincent, which is a 214.01 petition, so it's not really relevant here. But in any case, the case law, even that cited by the state, seems to suggest that second-stage proceedings are necessary to litigate this issue of standing. Well, isn't the point of the first stage to act as a gatekeeper for things that are frivolous or patently without merit? I mean, I'll answer that. Yes, that's what the first stage is for. And given that that's the case, you know, I mean, by your reasoning, somebody who is not even registered under the sex offender registry, they are clearly out of prison. They're living their lives without restrictions, could come back in, could file a post-conviction petition, and the judge could not dismiss it on the first stage. He or she would have to advance it to the second stage. Does that make any sense? Doesn't that completely eliminate a very important gatekeeping role that the first-stage judge would have? Oh, I don't agree that this would confer. I don't agree that I'm arguing that anybody who's not even registered under the sex offender registration statute would be able to come in and file a petition at any time. No, but what you're saying is the question of standing always has to be at the second stage. So that means anyone could come in off the street and file a PC, and it would have to advance to second stage, even if everybody knew that this person was no longer imprisoned. I mean, does that make sense? I mean, couldn't there be some reasonable common sense, you know, made of this? I mean, couldn't you say that in and of itself is without merit, is patently without merit? Judge, I don't find a published case where these matters have been, this matter of standing has been, has been decided without a motion by the state to dismiss. Okay. I don't find that. But I also would like to talk a little bit about the requirements of the sex offender registration act and other requirements imposed on sex offenders. This isn't, you know, under Malchow, the court decided that the requirements were merely, were merely a collateral consequence of the conviction. But in so holding that, the Malchow court said, the Malchow court said that the notification law in that case does not place an affirmative disability or restraint on sex offenders. Their movements and activities are not restricted in any way. And that is on page 422 of that case, 293 L second 422. Since the time that Malchow was decided, the sex offender registration and other requirements have come a long way. Not only are sex offenders required to routinely show up at a police station and register, give their registration information, but that, that information is widely disseminated in the community at this stage. And there are also, I counted, at least or approximately 20 affirmative restraints under, on sex offenders pursuant to 720 ILCS 511-9.3, which is cited, I'm sorry, which is included in the statutes involved portion of my brief. Sex offenders cannot be present within any school building. They can't transport students to and from school or school activities. They cannot be present within 100 feet of a school bus stop. They cannot be present in a park, playground or recreation area accessible to the public. They cannot loiter within 500 feet of a school. They cannot loiter on a public way within 500 feet of a public park building. They cannot reside within 500 feet of a school. They cannot reside within 500 feet of a playground, childcare institution or daycare facility. Sex offenders cannot reside within 500 feet of a victim. They cannot communicate with a minor using the Internet or digital media. They cannot be employed by any entity that provides programs and services to people under 18. They cannot participate in holiday events with people under 18, such as Halloween. Isn't all that for the public good? Your Honor, I'm not saying that it's not for the public good. But what I am saying is that the statutes involved here place substantial restrictions on the freedom, the movement, the residence of people who are registered sex offenders. So, in that way, the statutory scheme has changed a lot since the time that the Illinois Supreme Court decided people versus mal-child. This is not simply a registration requirement at this point. Would you agree that sex offenders have a tendency to continue on doing the same thing time and time again? Judge, I think that is the commonly held view. I think there might be statistics that dispute that, none of which I have here with me today. But I do agree that is the commonly held view. In some countries, repeat offenders are never allowed out of prison ever when they commit a sex offense. Here we let them out, but we restrict them to save lives. Is this wrong? Is this a wrong concept? And I am not arguing the wrongfulness of the restrictions placed on sex offenders. All I'm arguing is that the restrictions are so onerous that a person who was wrongly convicted or believes they have a claim for constitutional relief should be able to obtain relief under the Post-Conviction Hearing Act. That's all I'm arguing. I'm not arguing against the validity of the Sex Offender Registration Act or other requirements. Okay. So this statute is cited in my brief. I won't go through the other items that sex offenders are prohibited from participating in, but I will just go on to say that it also affects their, or it also restricts their employment in certain areas as well. So... Ms. Ponson, I know you wanted to save some time for rebuttal, so why don't you wrap up this portion of it. I will. I will. So the statutory scheme that was in place when the Illinois Supreme Court decided that sex offender registration is just a collateral consequence has been greatly modified, and the burden on registered sex offenders at this point is extremely onerous. And for that reason, they should be entitled to seek relief. They should have standing under the Post-Conviction Hearing Act even when their sentences have been terminated. Thank you. Mr. Rogers? May it please the Court. With respect to the ruling in this case that the judgment of dismissal in this case was absolutely correct for two reasons. One, this dismissal did occur within the 90 days, notwithstanding that the Circuit Court clerk dropped the ball in this case. And the other thing is that the judgment based on the lack of standing was absolutely correct. With respect to the 90-day, the statute very clearly sets out two verbs, two acts that have to take place, and this was discussed in the Lentz case that came out of the Second District. It's the most recent appellate court case discussing this issue. Of course, though, the binding case is the case of Brooks, which is an Illinois Supreme Court decision. And in Brooks, I want to point out, the petition in Brooks was file-stamped, and the Illinois Supreme Court could have very easily said that was docketing, and they didn't. They looked at the definitions for Black's Law Dictionary, and they looked at the dictionary definition from Webster's, and then they arrived at their own definition of what constitutes docketing, and it's not file-stamping. In that case, there was a half-sheet entered by the clerk that indicated that not only the petition had been filed, but the case had been set for assignment or for some future hearing date. And the Supreme Court said that's what docketing is. It's entry in a court document for future proceedings. That is the actual definition in our state of what it means to docket. The file-stamp, there's not a courtroom that I've been in over 25 years of experience in the Circuit Court of Cook County where when you hand a piece of paper to the clerk, they immediately file-stamp it. And it's stamped file, not docketed. This is file. It's not entry into an official court document, as happened in Brooks. The Lentz case is also a perfectly good example. So would it need to be put on the court call in order for it to be considered docketing? Well, Brooks is very careful about that. It doesn't need to be put in. Judge Hines was the particular judge in this case. It wouldn't necessarily need to be set to Judge Hines in order for the 90 days clock to start running. It just needs to be set for future proceedings. So if it got sent to the chief judge first and then got sent to Judge Hines, the minute it was entered in the court's own records and then set for future proceedings, the clock began to run. Now, in this case, though, there's no half-sheet entry. There's no criminal disposition sheet until June 26th. Again, the clerk dropped the ball. That's not acceptable, but that's on the clerk. The defendant in this case was not deprived of a 90-day review. So the defendant has no recourse. He has no nothing. He did everything he thought he was supposed to do. He brought it to the clerk's office. And just saying, well, the clerk screwed up, that's enough? That's enough to say, sorry, you did everything right, Mr. Defendant, but you're out of luck. I think we have to look at each case on a case-by-case basis. Here we have a defendant who clearly lacked standing. By the time he filed his petition in December of 2013, he'd already been off his probation for six months. So standing was already – he was already outside the act. The ship had sailed. The ship had sailed. So, again, case-by-case basis. Is the defendant deprived of something? A good example is Rule 606, where the clerk's office is supposed to send out an order notifying a criminal defendant that the post-conviction petition has been dismissed. And that's so that the defendant has an opportunity to file a timely notice of appeal. In that instance where the clerk is tardy, drops the ball, forgets to – or whatever mislays the documentation they're supposed to send to the defendant, the courts of our state have crafted a remedy to address that. And they've allowed defendants to file late notice of appeal so that the defendant is not prejudiced in that situation. In this particular case, under this set of facts, looking at a case-by-case basis, defendant's not deprived of anything. Defendant was entitled to a 90-day review from the time of docketing to the time of dismissal. This happened actually very quickly. Judge Hines was very conscientious about the 90-day clock. He was very aware of it. He made a record of the fact that this petition had all kinds of markings on it, but there was no – it hadn't been brought to the court's attention, hadn't been docketed. And he addressed it right away. He addressed it, I believe, in July. And as I said, the first criminal disposition sheet of any – the first official court document of any kind noticing this case is the criminal disposition sheet. That's June 26th. Before that, counsel had motioned the case back up in May, May 21st, I believe. So even counting that as the date of docketing, which might be a stretch, but counting that as the day of docketing, Judge Hines still dismissed this case within 60 days, not 90 days. So I think we have to look at, is the defendant prejudiced by an act? Here we have a defendant who's clearly not entitled to relief under the Post-Conviction Hearing Act from the get-go. So this defendant's not deprived of anything. Sending it back for further proceedings is sort of a merry-go-round of torture because you're saying that the defendant has to go through more hoops, go to the second stage, only to find out you still lack standing. Just briefly, the Lentz case, in the Lentz case, the DuPage County clerk actually entered the case into the computer records of the DuPage County clerk. So the case was filed and docketed. The bad argument that was made in that case was that, oh, filing and docketing can't happen the same day. I don't know why they made that argument in the Second District. It's a bad argument. Of course filing and docketing can occur in the same day. And I note, too, that we now have e-filing in the Circuit Court of Cook County. And my hope is, my sincere hope, is that the program is now designed so that this is a thing of the past, so that when an initiating document that initiates proceedings is filed, docketing should occur essentially at the same point in time, that once it's entered into the computer, proper notice goes to the chief judge for assignment of the case, that this really should be a thing of the past. I sincerely hope there's no reason to construct the e-filing program any differently than that, although I made no guarantees. I didn't design the program, and I'm not exactly sure that that's how it's set up, but that's how it should be set up. This shouldn't happen again. So what about the priority of deciding this issue at the first stage? Your Honor, that, I must say, I'm caught a little off guard. I don't recall that being an issue in the defendant's brief. I will say this. I can cite additional authority to you where there is actual case law that says that, I believe from this district, definitely appellate court cases that say that this is definitely an issue that can be decided at the first stage, the lack of standing. I will point out it's well-settled law from the Illinois Supreme Court, the case of Blair, People v. Blair, and I hate to cite cases to you that haven't been talked about in the briefs, but Blair is sort of a landmark case when it comes to post-conviction law. In that case, procedural default, issues of procedural default, like waiver and res judicata, are perfectly good grounds for dismissal at the first stage, even though it doesn't technically go, maybe in a perfectly legal, literal sense, to frivolous and patently without merit. Issues of procedural default are, and are routinely dismissed at the first stage, and approved, and affirmed on appeal. So an issue of justiciability, like standing, is head and shoulders above a mere issue of procedural default. Procedural default is something that can be, there's all sorts of means of evading procedural default. Counsel was alluding to that, that standing may be something as a serious issue that could be taken out by counsel. Well, so are issues such as timeliness, but especially issues of waiver and res judicata. A perfectly good end-around that's often used is ineffective assistance of appellate counsel for not raising the issue. That's usually the means of evading waiver and res judicata, or especially waiver and forfeiture, on a first stage PC. The point being that I can cite as additional authority cases that say, or at least a case, remember, recollect seeing something that said that this is a perfectly good grounds at the first stage. And again, it's an issue of justiciability. It goes, it's like mootness. Mootness is also an issue that can be dismissed at the first stage, because it goes, like jurisdiction, it goes to the power of the court to do anything. Justiciability goes to the ability of effective relief. I'm sorry. No, that's okay. That's all true. But this is taking place without the state and usually, not in this case, but usually without a defense attorney. So it's a pro se plaintiff most of the time and a judge. There's no lawyer for him and there's no one on the other side. Is that really the best time to be citing issues of justiciability? I mean, I'm not sure. According to the case law, yes. Because especially in a case like this where it's a clear-cut case of the defendant is outside the relief that can be granted by the Post-Conviction Hearing Act. Post-Conviction Hearing Act offers the same relief, in essence, as a writ of habeas corpus on the federal level. It's designed to do the same thing. I hate to use this, but it's a get-out-of-jail-free card. It's a court order that's directed to a warden or a jailer that says that this individual should be free. That's what the Post-Conviction Hearing Act does. That's the whole point of the Post-Conviction Hearing Act. So it does not apply to collateral consequences of a conviction. Now, Carrera, the Carrera case I cited in the owner's Supreme Court, is a perfectly good example of this. In fact, it's an even stronger example than what we have here with respect to SORA, the Sex Offender Registration Act, and the various restrictions that are placed on sex offenders. Now, with respect to Carrera, the issue there was deportation. Now, a defendant here is talking about restrictions in terms of not being allowed within so many feet of a school or a park. Well, deportation means you don't just not get to live in the city of Chicago or Cook County or Illinois. You don't get to live in the United States of America. That's a far greater impingement on somebody's liberty interest than just saying you have to keep a respectful distance from a school or a park. And the fact of the matter is that the owner's Supreme Court, which is binding law, said that that's a collateral consequence. It is not a sufficient actual curtailment of a liberty interest that would be recognized under the Post-Conviction Hearing Act. So if deportation, removal from the United States of America, is insufficient for post-conviction relief, then certainly with the few restrictions that, and the counsel, I will agree that there have been additions to Section 9.3, but the fact remains that SORA and many of these restrictions were already in place at the time that Malchow was decided. Malchow is not the Supreme Court's last word on the issue of SORA or the restrictions that go on sex offenders. Almost every year the Supreme Court addresses this, upholds the validity of SORA in some way, shape, or form, and says that it's not punishment. And that's a big key here. Some recent examples I cited in my brief are Boquette v. Konetsky and Rizzo, which is a 2016 case. And the Supreme Court has been very clear that this is not punishment. It is to protect the public and it is to aid law enforcement. That is the purpose of it. So the defendant does have other remedies available, but the Post-Conviction Hearing Act is not one that is available to this defendant. Defendant lack standing. Judge Hines correctly dismissed the petition in this case. With that, the people respectfully request that this Court affirm their judgment dismissing the petition. Thank you, Mr. Walter. Ms. Clemson, brief rebuttal. I'd like to point one thing out to this Court that's very important here. In order to decide that the dismissal in this case was wrong, you don't have to decide that standing is an issue that always has to be addressed at the second stage of post-conviction. Because in this particular case, the dismissal on the Court's own initiative was wrong. The 90-day rule was violated. So in this particular case, this petition should have been moved to the second stage no matter what. The dismissal took place 225 days after the petition was filed. So that actually should have been considered as a second stage petition no matter what. And then also, the State cited to Brooks in its argument here, and I want to point out that in McCaskill and Gibson, this Court distinguished Brooks for the same facts that are present in this case. Brooks was a case where a prisoner mailed his petition to the circuit court clerk's office. The petition was marked received in the clerk's office on September 13th of 2002. And then seven days later, it was marked filed in the clerk's office. And that was September 20th, 2002. The petition was summarily dismissed, first stage dismissed, more than 90 days after the petition was marked received, but less than 90 days after it was marked filed. Now, the Supreme Court in Brooks said that that petition was not docketed until it was marked filed. And therefore, there was no 90-day violation. But Brooks is not inconsistent with what we are arguing here. In Brooks, the Illinois Supreme Court said that the 90 days began to run when that petition in Brooks was marked filed. Same thing in Gibson, same thing in McCaskill, same thing in Lentz. So there was nothing more that needed to take place here than the petition was filed in the clerk's office. Now, one thing that we agree on is the clerk dropped the ball. We don't know what happened, but the clerk has the responsibility, once it files a document, of doing whatever needs to be done to bring it to the court's attention. So Brooks is not inconsistent with what we're asking the court to do here in terms of the 90-day rule. And then, again, this is something that's not addressed in the briefs, but the state discussed Blair and its decision that issues of waiver and res judicata could be resolved at the first stage of post-conviction relief. There are also cases by the Illinois Supreme Court stating that there are certain legal issues that should only be decided at the second stage. And one of those cases is Beauclair, which I can't cite to you right now. It's not cited in the briefs, pardon me. But it's Beauclair that says that issues of timeliness of a post-conviction petition and whether or not the defendant is at fault for an untimely petition is something that can only be addressed at the second stage. Again, another potentially thorny legal issue, and I can certainly file some additional authority on that particular part of it. But I just wanted to bring that to the court's attention. And, again, to say that in this case, we don't have to say that in every case standing has to be decided at the second stage. Because in this case, what essentially happened was there was a petition that was, by law, a second-stage petition that was treated as if it were a first-stage petition. So Mr. Begay is asking this Court to reverse the circuit court's dismissal and remand for further post-conviction proceedings. Thank you. Thank you, Mr. Penson. Penson. The Court will take the matter under advisement on an issue of ruling issues.